IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


WILLIE JAMES HUDSON,

        Petitioner,

v.                                            CASE NO. 1:10-cv-190-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Respondent filed a response and an appendix with relevant portions of the state-court record. (Doc. 14.) Petitioner has filed a reply. (Doc. 20.) Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State Court Proceedings

Petitioner's underlying convictions stem from a shooting on July 2, 2003 that resulted in the deaths of Kevin Harris and John Adkins. The evidence presented at trial was as follows: One of the victims, Kevin Harris, was seen by eyewitnesses getting into a car on July 2, 2003. Shortly thereafter, there appeared to be a struggle in the car, gunshots were fired, and the car crashed a few houses away from where Mr. Harris entered the car. When neighbors arrived at the car, the front-seat passenger (Mr.

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Harris) and the driver (Mr. Adkins) were wounded, and a man only identified as a "black male" was observed exiting the back of the vehicle and running away. Mr. Harris was killed by the first of three gunshot wounds. Mr. Adkins was shot in the head and transported to the hospital, but later died.

The car involved in the crash, a silver Buick, belonged to Petitioner. Two handguns were retrieved from the wrecked car: a loaded .38 caliber Smith & Wesson revolver found on the right rear floorboard with three spent casings in the pistol and one live round; and a nine-millimeter Luger found on the driver's floorboard that did not appear to have been fired. Firearms examiner and analyst David Warniment testified that the bullets retrieved from the bodies of the victims were fired from the .38 Smith & Wesson. Fingerprint examiner Lori Wright testified that Petitioner's fingerprints were found on a toiletry bag in the trunk of the car and on an empty soda can. Latent prints lifted from the .38 Smith & Wesson "were of no value."

Jacquelyn Jennings testified at trial that on July 2, 2003, one of the victims, Mr. Adkins, asked her for a ride from Polk County back to his home in Gainesville. In the early morning hours of July 2, 2003, Ms. Jennings and Mr. Adkins arrived at the Gainesville apartment Mr. Adkins shared with his girlfriend, Olivia LaBorde. Ms. Jennings testified that Petitioner arrived at the apartment in his silver Buick around 9:00 a.m. and that between 4:30 p.m. and 5:00 p.m., Petitioner and Mr. Adkins left the apartment together. Later that evening, Petitioner returned to the apartment alone, "scared and nervous" with a gash under one of his eyes and blood coming from his mouth. Ms. Jennings later drove her car to the hospital where Mr. Adkins had been taken, dropped off Ms. LaBorde, and continued with Petitioner to Polk County. Ms.

Jennings testified that on the way back to Polk County with Petitioner, he told her that he had been in the backseat of the car, Mr. Adkins had been driving, and that when the other man began fumbling in a white bag, Petitioner fired shots from the back seat.

Kimbree Anderson, girlfriend of Mr. Harris, testified that he told her he was going to meet Mr. Adkins that afternoon to do a drug deal. Mr. Adkin's girlfriend, Ms. LaBorde, testified that she knew her boyfriend was in the business of selling drugs. She saw Petitioner and Mr. Adkins leave the apartment together the afternoon of the shooting. Later, Petitioner returned alone. He took a shower and changed clothes. Ms. LaBorde testified that she, Petitioner, and Ms. Jennings left together in Ms. Jennings' car and Petitioner finally told her that "the door was open and the guy lunged at him" and "it was a blur." A crime laboratory analyst testified at trial that a towel seized from Ms. LaBorde and Mr. Adkin's apartment contained DNA from Petitioner and Mr. Adkins as well as "genetic markers" from Kevin Harris and what appeared to be blood.

At trial, Petitioner called his wife, Selena Hudson, to testify. She testified that Petitioner was in Polk County the morning of the shooting and that around 11:00 a.m. they returned to Orlando in Petitioner's silver Buick. Ms. Hudson testified that shortly after noon, Mr. Adkins arrived at Petitioner's home in Orlando and asked to borrow Petitioner's car. Petitioner agreed, and gave the keys to Mr. Adkins. Ms. Hudson testified that her husband was with her in Orlando until around 6:30 p.m., at which time he left and did not return that night. (Exhs. F-H, K, L.)

Petitioner was indicted on two counts of first-degree premeditated murder and possession of a firearm by a convicted felon. (Exh. A.) After two mistrials, a jury found Petitioner guilty in 2005 of two counts of manslaughter, a lesser included offense of the

murder charges. (Exh. B.) Petitioner subsequently had a bench trial on the firearm possession charge, and was found guilty. (*Id.*) Petitioner was sentenced to 15 years in prison on each of the manslaughter charges, to be served consecutively to one another; and 15 years imprisonment on the firearm charge, to be served concurrently with the first manslaughter charge. (Exh. C.) The First DCA affirmed without opinion on March 8, 2006. (Exh. M.); *Hudson v. State*, 924 So. 2d 814 (Fla. 1st DCA 2006).

Petitioner filed a Fla. R. Crim. P. 3.850 motion on April 5, 2006. (Exh. N.) It was summarily denied by the trial court, but affirmed in part and reversed in part by the First DCA. On remand, the trial court conducted an evidentiary hearing on the sole issue identified by the First DCA, and the trial court subsequently denied relief. (Exh. BB, CC.) The First DCA affirmed without opinion. (Exh. JJ); *Hudson v. State*, 18 So.3d 1040 (Fla. 1st DCA 2009). Petitioner has also unsuccessfully sought state habeas relief (Exhs. W-AA) and mandamus relief (Exhs. MM, NN.)

The instant Petition, which Respondent concedes is timely, followed. Petitioner asserts five grounds for relief in his *pro se* Petition. (Doc. 1.)

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v.*

*Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law,

the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir.

1999). Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to

properly present the claim and actual prejudice from the default, or (2) that a

fundamental miscarriage of justice would result if the claim were not considered. *Id*. at

1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*,

592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a

petitioner must present new reliable evidence that was not presented at trial showing

that "it is more likely than not that no reasonable juror would have found petitioner guilty

beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and

convincing evidence that the state court's factual determination was "objectively

unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its

conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Ineffective Assistance of Counsel

Because Petitioner's claims allege ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The

relevant question is not whether counsel's choices were strategic, but whether they were

reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute

rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute

rules would interfere with counsel's independence–which is also constitutionally

protected–and would restrict the wide latitude counsel have in making tactical decisions."

*Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy,

[the Court] need not attempt to divine the lawyer's mental processes underlying the

strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc).  "No lawyer can be expected to have considered all of the ways [to provide

effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other
> reasonable courses of defense (that the lawyer did not think of at all)
> existed and that the lawyer's pursuit of course A was not a deliberate
> choice between course A, course B, and so on.  The lawyer's strategy was
> course A.  And [the Court's] inquiry is limited to whether this strategy, that
> is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome."  *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Id.* Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### Claim 1: Failure to call more than one alibi witness at trial

Petitioner contends that his counsel rendered ineffective assistance by failing to call Rosetta Brown and Yolanda Gray as alibi witnesses at his third trial. He argues that had they been called to testify as alibi witnesses in addition to his wife, he would have been acquitted. (Doc. 1.)

Petitioner raised the issue of failure to call witnesses as Issue 4/Ground D in his initial 3.850 motion (Exh. N.) The state court found that this ground was facially insufficient because Petitioner failed to provide the court with any information regarding the identity of the witnesses, the substance of their testimony, their availability to testify, or the prejudice resulting from omitting their testimony. (Exh. N, p. 58.) However, the state court granted Petitioner an opportunity to amend, and his "Amended Issue (D)" alleged that the trial counsel was ineffective for failing to call Rose Brown and Yolanda Gray as alibi witnesses. The state court denied the amended claim (Exh. N, pp. 120-24), but was reversed by the First DCA, which affirmed the denial of Petitioner's other claims but remanded for an evidentiary hearing on the issue of whether trial "counsel was ineffective for failing to call Rose Brown." (Exh. U.) After an evidentiary hearing (Exh. CC), the state court once again denied Petitioner's claim as to Rose Brown. (Exh. BB, pp. 38-44.) This time, the First DCA affirmed without opinion.

As an initial matter, Respondent contends that this ground is unexhausted as to Yolanda Gray because when Petitioner appealed the state court's second denial of this claim, he only argued that trial counsel was ineffective for failing to call Rose Brown. (Doc. 14, pp. 6-7; Exh. GG.)  However, as Petitioner points out in his Reply and as Respondents reference in their brief, the First DCA, in its order affirming in part and reversing in part, implicitly affirmed denial of relief as to failure to call Yolanda Gray. (Docs. 14, p. 4; 20; Exh. U.)  Petitioner fairly presented the issue regarding Yolanda Gray to the state court in constitutional terms, and the First DCA affirmed.  On this record, it cannot be said that Petitioner failed to exhaust his claim that trial counsel was ineffective for failing to call Yolanda Gray as a witness.

As to the merits of the claim regarding Yolanda Gray, in rejecting the claim on postconviction review, the state court found that Ms. Gray's deposition testimony conflicted with the testimony of Petitioner's wife, Selena Hudson, in several ways.  Ms. Gray testified that she saw Petitioner arrive at his home in a yellow car, his wife was already at home, it was on a Monday (she wasn't sure of the date or time), and that he left in the same yellow car.  The shootings took place on a Wednesday, and Selena Hudson testified that she was with her husband when they arrived home in the silver car and that he left that evening on foot.  (Exh. N, p. 122; Exh. H, pp. 478-79.)  The state court ruled that Petitioner had failed to show, per *Strickland*, a reasonable probability that the outcome of the trial would have been different but for counsel's failure to call Ms. Gray.  (Exh. N, p. 123.)  The First DCA affirmed as to the claim regarding Ms. Gray.

Even assuming, *arguendo,* that trial counsel was deficient for failing to call Ms. Gray to testify at the third trial, there was not a reasonable probability that her testimony

would have affected the outcome of the trial. Ms. Gray was unsure of the date and time she saw Petitioner; she insisted it was a Monday although the shootings occurred on a Wednesday; and her testimony that Petitioner left in a yellow car conflicts with the testimony of Petitioner's wife that Petitioner left their home that evening on foot. On this record, Petitioner has failed to show that the state court's decision as to Yolanda Gray reflects an unreasonable application of *Strickland*.

As to Petitioner's ineffective assistance claim regarding Rose Brown, the state postconviction court applied *Strickland* to find that trial counsel was not ineffective for failing to call Rose Brown. Ms. Brown would have testified that Petitioner was driving a yellow car on the day for which she could provide an alibi. As the state court pointed out, Ms. Brown's testimony conflicted with the testimony of Petitioner's wife, who testified that the she and her husband arrived home in the silver Buick, one of the victims borrowed it, and they only owned one car at the time.

The state court also relied on the testimony of trial counsel at the postconviction evidentiary hearing. Trial counsel testified that Petitioner's wife was a stronger witness regarding facts supporting an alibi, and that the testimony of Petitioner's wife and Ms. Brown conflicted in several ways. Trial counsel testified that Petitioner's wife was the preferred alibi witness, and he wanted her testimony to be uncontradicted. To accomplish this, he did not call Ms. Brown to testify. The state court concluded that trial counsel "cannot be held ineffective for a strategic decision if, as here, alternative courses of action have been considered and rejected." (Exh. BB, p. 42) (citing *Rutherford v. State*, 727 So. 2d 216 (Fla. 1998)).

Counsel made a tactical decision to present his strongest alibi witness and to

ensure that her testimony was uncontradicted. Because Ms. Brown's testimony conflicted in several ways with the testimony of Petitioner's wife, counsel decided not to call her to testify at the third trial. On the basis of this record, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's ineffective-assistance claims, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Claim 2: Failure to object to jury instruction on manslaughter by culpable negligence

Petitioner, who was indicted on two counts of premeditated first-degree murder but found guilty of the lesser charge of manslaughter as to each count, argues that trial counsel was ineffective for agreeing to the jury instruction on the lesser included offense of manslaughter by culpable negligence. Petitioner asserts that counsel agreed "even though the indictment made no mention of criminal conduct which would substantiate the element of culpable negligence, nor as a matter of record, was any evidence adduced during trial which would justify or even infer that [Petitioner] had committed the crimes in such a manner." (Doc. 1, p. 11.)

In rejecting this claim on postconviction review, the state court rejected Petitioner's argument that the state was required to charge Petitioner with manslaughter by culpable negligence in the indictment. "An indictment which charges first-degree murder 'embrace[s] all lesser degrees of unlawful homicide.'" (Exh. BB, p. 40) (quoting *Snell v. State*, 158 So. 2d 863, 867 (Fla. 1947)). The state court also rejected

Petitioner's contention that the evidence did not support the finding of manslaughter by culpable negligence: "Two of the State's witnesses, to whom Defendant confessed, testified that Defendant told them that the deaths were accidental (and that he was not trying to rob the victims). As such, there was evidence presented at trial which supports the manslaughter instruction as given." (Exh. BB, p. 40.) The state court concluded:

> Because manslaughter by culpable negligence is a lesser-included offense of first-degree murder, and because there was testimony at trial which supports a finding that Defendant may have unintentionally caused the death of the victims during a struggle, trial counsel did not err by failing to object to the jury instruction as given.

(Exh. BB, p. 41) (citing *Dolan v. State*, 85 So. 2d 139, 139 (Fla. 1956) (affirming conviction for manslaughter where the defendant shot the victim during a struggle over the weapon)).

"The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Basile v. McNeil,* 2008 WL 4456816 (M.D. Fla. 2008) (quoting *Hopper v. Evans,* 456 U.S. 605, 612 (1982)). As the state court concluded, there was sufficient testimony presented at trial to support a finding that Petitioner may have unintentionally killed the victims during a struggle. For example, two witnesses, Jacquelyn Jennings and Olivia LaBorde, testified as to Petitioner's statements regarding what happened in the car, both of which support a theory of manslaughter. Regardless of the State's theory that the deaths were the result of a robbery gone wrong, there was evidence presented at trial to support a finding of manslaughter by culpable negligence (i.e., the alternative theory that Petitioner accidentally shot the victims during the course of a struggle in the car). Here, it appears

that due process required that the instruction be given to the jury.  Trial counsel cannot

be deemed deficient for failing to object to the jury instructions where he had no basis to

do so.  *See, e.g., Basile,* 2008 WL 4456816 at *6.

To the extent Petitioner argues counsel was ineffective for challenging the

sufficiency of the indictment, the sufficiency of a state indictment or information is not a

matter for federal habeas corpus relief unless it can be shown that the indictment or

information is so defective that the convicting court had no jurisdiction. *Murphy v. Beto*,

416 F.2d 98 (5th Cir. 1969); *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980).  In this

case, the indictment was determined to be sufficient under state law.  A state's

interpretation of its own laws or rules provides no basis for federal habeas corpus relief

because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v.*

*McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.").  Petitioner has failed to

show that the indictment was defective such that the court lacked jurisdiction.  Petitioner

has failed to show that his counsel rendered ineffective assistance in this regard, and

has failed to show that the state court's rejection of this claim was contrary to, or an

unreasonable application of, federal law.

On the basis of this record, and mindful of the high degree of deference that is

afforded to the state court's assessment of the merits of Petitioner's ineffective-

assistance claims, Petitioner has failed to show that the state court's rejection of this

claim was contrary to, or an unreasonable application of federal law, or an unreasonable

determination of the facts in light of the evidence adduced in state court.

### Claim 3: Failure to challenge finding of guilt on firearm charge

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the factfinder's conclusion of guilt on the possession of a firearm by a convicted felon charge where the State failed to prove a prima facie case. After Petitioner was found guilty of the shooting deaths of the two victims, he had a bench trial on the third count in the indictment–possession of a firearm by a convicted felon.[2] The judge found Petitioner guilty. (Doc. 1.)

In rejecting this claim on postconviction review, the state court wrote:

> The [trial] court found Defendant guilty based on the evidence presented at trial. Prior to the judgment, Counsel argued that the court was not required to find Defendant guilty of Possession of a Firearm merely because the jury found Defendant guilty of Manslaughter. The judgment was affirmed on appeal. There was no basis for counsel to object to the adjudication of Defendant on this charge.

(Exh. N, p. 59) (internal citations omitted).

Petitioner argues that trial counsel should have objected because the trial court's finding of guilt as to the firearm charge "was clearly against the weight and sufficiency of the evidence." (Doc. 1, p. 17.) In Florida, the test for sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Melendez v. State*, 498 So. 2d 1258, 1261 (Fla. 1986) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). As long as there is sufficient evidence in the record to support every reasonable inference from evidence favorable to the state, the appellate court will affirm judgment. *Adkins v. Adkins*, 650 So. 2d 61, 62 (Fla. 3d DCA 1994). "In Florida, to prove possession of a firearm by a convicted felon, the 'only two elements the

---

[2]Petitioner signed a waiver giving up his right to trial on the charge of possession of a firearm by a convicted felon.

state needs to prove are: (1) that [defendant] was a convicted felon, and (2) he was in possession of a firearm.'" *Cooper v. Sec'y, Dept. of Corrections,* 2011 WL 795812, *9 (M.D. Fla. 2011) (quoting *McCallum v. State*, 537 So. 2d 122, 124 (Fla. 1st DCA 1988)); Fla. Stat. § 790.23.

Petitioner does not contend that he was not a convicted felon, and the record confirms that he has prior felony convictions, including a prior conviction for possession of a firearm by a convicted felon.  (Exh. C, pp. 398-99.)  When taken in the light most favorable to the State, the evidence presented at trial was ample to have permitted a rational trier of fact to find that Petitioner had committed the crime of possession of a firearm by a convicted felon under Florida law, rendering the evidence constitutionality sufficient to sustain the conviction.  In addition to testimony that there were only three people in the vehicle (two of whom were the victims); there was DNA evidence on a towel linking Petitioner to both shooting victims; and Jacquelyn Jennings testified that Petitioner told her that he had been in the backseat of the car, Mr. Adkins had been driving, and that when the other man began fumbling in a white bag, Petitioner fired shots from the back seat.  Since there was sufficient evidence presented to satisfy the trier of fact that Petitioner had committed the offense, Petitioner cannot demonstrate that counsel was ineffective for failing to object to the sufficiency of the evidence on the firearm charge.  Even if counsel could be deemed deficient for not objecting, Petitioner would not be entitled to relief because he cannot demonstrate prejudice.

On this record there is no reasonable probability that the outcome of the bench trial would have been different but for counsel's failure to object to the sufficiency of the evidence or failure to move for judgment of acquittal.  Petitioner has failed to show that

the state court's rejection of this claim was contrary to, or an unreasonable application

of, federal law.

### Claim 4: Improper prosecutorial remarks

Petitioner contends that two sets of remarks by the prosecution during closing

arguments shifted the burden of proof, bolstered witness testimony, and rendered his

trial fundamentally unfair.  (Doc. 1, pp. 18-23.)  The first statement, found at pp. 497-98

of the trial transcript (Exh. H), was made during the prosecution's initial closing

arguments.  The second statement, found at p. 552 of the trial transcript (Exh. I), was

made during the prosecution's final closing arguments.

As Respondent points out in his response (Doc. 14, p. 14) and as Petitioner

concedes in his reply brief (Doc. 20, p. 17), he did not fully exhaust his claim as to the

second statement.  However, even if Petitioner had fully exhausted his claim as to the

remarks on p. 552 of the trial transcript, his claim would still be due to be denied on the

merits, as explained more fully below.

Petitioner raised the issue of the propriety of the prosecution's remarks in its initial

closing argument (Exh. H, pp. 497-98) on direct appeal.  (Exh. K.)  The First DCA

affirmed without opinion.  (Exh. M.)  Accordingly, he has exhausted his claim as to the

remarks on pp. 497-98 of the trial transcript.  The remarks challenged in Petitioner's

exhausted claim were:

> So, if you find the defendant, Mr. Hudson, was in Gainesville on the evening,
> early night of July 2nd, 2003, if that's what you find, then he's guilty.
>
> If you disbelieve Selena Hudson, the alibi's been disproved and he's guilty.
>
> If you believe Olivia LaBorde, at least to the extent that she puts Willie
> Hudson in Gainesville and not someplace else, he's guilty.

If you believe Anthony Anderson, at least to the extent that he puts Willie Hudson in Gainesville, Willie Hudson is guilty.

If you believe the DNA established that he was here, he's guilty.

***

Now, what's even more important is you don't have to believe LaBorde and Anderson and the DNA and disbelieve the alibi. Any one will do. Any one that you credit enough to place Mr. Hudson in Gainesville is sufficient to remove any reasonable doubt of his guilt.

(Exh. H, pp. 497-98.)

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id*. at 1526. Thus, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

Here, the state court's decision rejecting Petitioner's due process claim was not contrary to, or reflected an unreasonable application of federal law. Even assuming,

*arguendo*, that the Prosecutor's remarks were improper, there is not a reasonable

probability that but for these remarks, the outcome of the trial would have been different.

First, the remarks should be put in context. Just prior to making the statement at issue,

the prosecutor stated:

> And I suggest to you that no matter what you think of the witnesses, no matter how you judge them, no matter what you think of them, no matter how much you think of their credibility, no matter how much of their testimony you decide to reject or accept, it doesn't change those basic fundamental facts about the case, if you just step back.
>
> They can only add to the facts, if you deem any of them to be worthy.
>
> Now, having said that, I want to offer you another way to look at the facts.
>
> One of the best indications of guilt is a false defense. Does it make any sense that a person who is not guilty of a crime would, in particular, present a false alibi? Think about it.
>
> I think you'll find, from common sense and logic, that only guilty people fabricate alibis or present an alibi that isn't true.

(Exh. H, pp. 496-97.) The jury did not find Petitioner guilty of first-degree murder, as

urged by the prosecutor in these remarks. Instead, it found Petitioner guilty based on

evidence that included DNA evidence on a towel Petitioner used that included his DNA

and DNA evidence from both victims; the testimony of Jacquelyn Jennings that

Petitioner told her he fired shots in the car; and the testimony of Olivia LaBorde that

Petitioner told him a guy lunged at him in the car and the incident was a blur.

Accordingly, there is not a reasonable probability that but for the prosecutor's remarks,

the outcome of the trial would have been different, and therefore Petitioner's claim is

due to be denied.

The second set of remarks, which Petitioner concedes he did not exhaust before

the state court, but which the Court finds would fail on the merits even if they were

properly exhausted, were:

> And then, of course, there's Mr. Anderson's testimony, which was, I thought, pretty absolute, which was: [referencing Mr. Anderson's identification of Mr. Hudson as the person who he gave a ride to the night of the shootings].
>
> If the suggestion is that he made a mistake and it was a person he'd seen the picture of in the paper, I don't think you should buy it.   Because the only conceivable way that Mr. Anderson could falsely identify Mr. Hudson is much more sinister than that, and it's that Mr. Anderson deliberately lied about Mr. Hudson being in his car for some ulterior motive; he wants to frame Mr. Hudson for murders he didn't do and he's making up the whole thing.
>
> So I think the newspaper picture is a red herring, in Mr. Bernstein's words.

(Exh. I, p. 552.)

Prosecutors are permitted to argue the credibility of witnesses, but are prohibited

from doing so based on evidence not before the jury or on the reputation of the

government office.  *See United States v. Hernandez*, 921 F. 2d 1569, 1573 (11th Cir.

1991).  "Improper vouching occurs if the prosecutor makes explicit personal assurances

of a witness's veracity, or indicates that information not presented to the jury supports a

witness's testimony . . . Improper vouching requires a determination that the jury

reasonably believed 'the prosecutor was indicating a personal belief in the witness'

credibility,' but does not prohibit arguments about credibility."  *Hong v. Secretary Dept.*

*Of Corrections,* 478 Fed. Appx. 648, 650-51 (11th Cir. 2012) (quoting *United States v.*

*Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009)).

The second set of remarks, like the first, even if they were improper, did not

render the trial fundamentally unfair and violate Petitioner's due process rights.  There is

not a reasonable probability that but for the prosecutor's improper remarks, the outcome

of the trial would have been different.

***Claim 5: Failure to object to improper prosecutorial remarks***

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the prosecutorial comments described in Claim 4, above. (Exh. H, pp. 497-98; Exh. I, p. 552.) Petitioner failed to assert a claim of ineffective assistance of counsel in state court as to either of the remarks.[3]  As these ineffective-assistance claims were not fairly presented to the state court, they were not properly exhausted. *See O'Sullivan*, 526 U.S. at 845. Moreover, Petitioner would be barred under state procedural default principles from asserting this claim in a future state post-conviction motion. Under Florida law, courts may summarily dismiss claims raised in a successive motion for post-conviction relief that were either previously adjudicated on the merits or that could have been raised in a prior Rule 3.850 motion. *Christopher v. State*, 489 So.2d 22, 24-25 (Fla. 1986); Fla. R. Crim. P. 3.850(f). Petitioner has made no showing of cause for the procedural default or that a fundamental miscarriage of justice would result from the failure to consider the merits of this ineffective-assistance claim. *See Bailey*, 172 F.3d at 1303.[4]

---

[3]The state court summarily denied Petitioner's allegation that trial counsel was ineffective for failing to object to prosecutorial comments in closing argument regarding Jacquelyn Jennings (Exh. I, pp. 554), but neither of the comments underlying Petitioner's ineffective assistance claims in the instant federal habeas petition were presented to the state court. (Exh. N, p. 56.)

[4] Even if the Court construed the claim as a direct challenge to the comments, Petitioner has already raised such a claim in Claim 4 of his habeas petition, which the Court has rejected.

## **Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 12th day of July 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**